**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE DAILY FANTASY SPORTS MARKETING AND SALES PRACTICES LITIGATION** | ) ) ) | **MDL No. 2677** |

**DRAFTKINGS' SUPPLEMENTAL MEMORANDUM REGARDING THE MOTION TO TRANSFER RELATED CASES FOR CONSOLIDATED PRETRIAL PROCEEDINGS
<u>PURSUANT TO 28 U.S.C. § 1407</u>**

## INTRODUCTION

Defendant DraftKings, Inc. ("DraftKings") hereby files this supplemental brief to address unique arguments raised in briefs filed after DraftKings had already responded to the pending MDL petitions.[1] While the vast majority of parties to file a response have agreed that it is appropriate to transfer the pending daily fantasy sports cases to a single court for consolidated pretrial proceedings, the plaintiffs in four cases—*Hemrich*, *Gardner*, *DeGroot*, and *Steiner*[2]—believe that their cases are unique and should be permitted to continue independently of the other 73. But all 77 of the related actions present common issues of fact and law that make them appropriate for transfer and consolidation in an MDL proceeding. The majority of the pending cases will involve threshold questions regarding arbitration under DraftKings' Terms of Use; all share common factual questions regarding the operation and advertising of DraftKings' daily fantasy sports contests; and, ultimately, nearly all of the cases involve claims of overlapping groups of individuals who all are seeking to recover amounts that have been deposited for daily fantasy sports contests. Allowing a handful of plaintiffs to continue on their own is antithetical to the very reason for MDL proceedings and would result in potentially

---

[1] *See* MDL No. 2677, Dkt. 89; MDL No. 2678, Dkt. 44; and MDL No. 2679, Dkt. 32.

[2] *See Hemrich v. DraftKings, Inc.*, No. 3:15-cv-00445 (S.D. Ill.); *Gardner v. DraftKings, Inc.*, No. 1:15-cv-12320 (D. Mass.); *DeGroot v. DraftKings, Inc.*, 2:15-cv-01122 (D.N.M.); and *Steiner v. DraftKings, Inc., et al.*, 8:15-cv-02795 (M.D. Fla.). Plaintiff in *Franco v. FanDuel, Inc., et al.*, 1:15-cv-09902 (S.D.N.Y.), also opposes the motion to transfer, *see* MDL 2677, Dkt. 178, joining arguments made by Plaintiffs in *Johnson* and *Allgeier* in their opposition, *see* MDL 2677, Dkt. 95. DraftKings has addressed these arguments in its earlier responses to the motions to transfer, and incorporates them by reference here. In addition, Plaintiffs in *Buscema v. FanDuel, Inc. et al.*, 1:15-cv-01121 (D.N.M.), filed a brief opposing the pending motions to transfer. (MDL 2677 Dkt. 141, MDL 2678 Dkt. 77, and MDL 2679 Dkt. 69). But *Buscema* has since been remanded to state court and therefore is no longer a candidate for transfer and consolidation. *See* MDL No. 2677, Dkt. 181; MDL No. 2678, Dkt. 84; and MDL No. 2679, Dkt. 79.

inconsistent pretrial rulings, duplicative discovery, and a waste of resources of the parties, their counsel, and the judiciary.

Accordingly, DraftKings respectfully requests that all of the related actions be consolidated in the District of Massachusetts for coordinated pre-trial proceedings. Joining all of the cases before a single court will conserve the parties' resources, serve the convenience of the witnesses, avoid duplicative discovery, eliminate the potential for inconsistent pretrial rulings, and promote judicial economy. The District of Massachusetts is the most logical location, given the procedural posture of these actions, the district's capacity to manage a complex MDL, the location of witnesses and documents, and relative convenience to all parties involved.

## ARGUMENT

### I. *Hemrich*, *Gardner*, *DeGroot*, and *Steiner* Should Be Transferred and Coordinated with the Other 73 Cases Regarding Daily Fantasy Sports.

This Panel may transfer "civil actions involving one or more common questions of fact" to a single district for coordinated pretrial proceedings if it determines that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). These criteria are clearly met for all related actions before the Panel, and these Plaintiffs' cases are no exception.

#### A. *Hemrich* and *Gardner* Admittedly Raise the Same Theories as Six Other Actions, and Share Common Factual Issues with the 73 Other Related Actions.

All of the related actions seek relief on behalf of classes of consumers who participated in DraftKings' daily fantasy sports contests. There is significant factual and legal overlap between the various types of cases. Many of the complaints advance multiple theories (including the same theories as the *Hemrich* and *Gardner* Plaintiffs regarding DraftKings' promotion of its

daily fantasy sports contests), and the actions involve overlapping putative classes of numerous class members. Indeed, the *Hemrich* and *Gardner* Plaintiffs even admit that four other plaintiffs have made substantially similar allegations regarding DraftKings' promotions in their complaints. MDL No. 2679, Dkt. 40 at 10. Since the *Hemrich* and *Gardner* Plaintiffs filed their first opposition briefs, MDL No. 2677, Dkt. 100 and MDL No. 2679, Dkt. 40, two other cases asserting similar theories have been filed in, or removed to, federal court and identified as candidates for this Panel to consider for transfer and consolidation. All of these cases raise the same factual question: Whether DraftKings' promotion to match the amount of a contestant's initial deposit improperly induced plaintiffs to deposit money for daily fantasy sports contests. (*Compare Hemrich* Compl. ¶ 38 *with Giametta* Compl. p. 2 and *Huizar* Compl. ¶ 21.)

Even if the *Hemrich* and *Gardner* Plaintiffs' cases presented a unique take on the same theories others have raised (and they plainly do not), that would not provide a basis for allowing them to proceed apart from the dozens of other actions pending before the Panel. The Panel has repeatedly held that coordination does not require a complete identity or even a majority of common factual or legal issues, because any unique issues can be addressed by the transferee court after centralization. *See In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374 (J.P.M.L. 2011); *In re Bank of New York Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372–73 (J.P.M.L. 2012). Centralization permits formulation of a pretrial program that allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues. *In re Zimmer*, 802 F. Supp. 2d at 1376–77.

There is no reason, therefore, to leave these two cases presenting the same theories as six related actions out of the MDL, particularly because the large number of other related actions

4

share a common defendant, involve overlapping classes, and, regardless of the specific legal theory asserted, ultimately arise from deposits that were made (and accepted) to enter daily fantasy sports contests.  *See In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (ordering transfer because the presence of the same defendant in each action gave rise to common factual issues).  It would be most efficient to have one district court judge address the core overlapping issues, who can structure the MDL as the judge sees fit to address any nuances in the theories asserted.

The cases the *Hemrich* and *Gardner* Plaintiffs cite do not warrant a different conclusion.  The Panel in *In re Celexa & Lexapro Products Liab. Litig.*, 416 F. Supp.2d 1361 (J.P.M.L. 2006), granted a motion to transfer and consolidate, but excluded from its order one action that was brought against a ***different defendant*** concerning ***a different product*** than the cases being consolidated.  Here, the related actions all bring similar claims against the daily fantasy sports operators DraftKings and/or FanDuel, Inc., regarding their daily fantasy sports contests, making coordinated treatment proper across all cases.

*In re U. S. Navy Variable Reenlistment Bonus Litig.* is of no more help to Plaintiffs.  That case concerned more than two dozen actions that had already advanced to various courts of appeals and were thus "dominated by appellate activity" by the time the Panel was considering transfer, making consolidation inappropriate.  407 F. Supp. 1405, 1407 (J.P.M.L. 1976).  All of the cases here are at the same early stage:  No discovery has been taken, and no court has issued an order on threshold questions of arbitration or the sufficiency of the pleadings.  While the *Gardner* and *Hemrich* Plaintiffs argue that their case is "further along," the judges presiding over those actions entered stay orders before any discovery requests were responded to or any substantive motions ruled upon.  That also makes this case much different than *In re Interstate*

*Medicaid Patients At Good Samaritan Nursing Ctr.*, where transfer and consolidation were denied because the relevant factual data already had been previously elicited in state proceedings. *See* 415 F. Supp. 389, 391 (J.P.M.L. 1976).

Not only do the cases before the Panel present common factual questions, they also present common threshold issues regarding arbitration, as all users of DraftKings' website agreed to Terms of Service containing a binding arbitration provision. While Plaintiffs argue that this is of no moment, citing *In re CleanNet Franchise Agreement Contract Litig.*, 38 F. Supp. 3d 1382 (J.P.M.L. 2014), the court in *In re CleanNet* denied transfer and coordination because the *only* common issue was an identical arbitration provision—the defendants and claims for relief were completely different across the cases. *Id.* Here, there is much more: The common threshold issue of arbitration illustrates the efficiency of proceeding before a single court, because the cases all are brought against the same defendants and raise similar or identical claims and/or factual issues directed at their daily fantasy sports competitions.

### B. The *DeGroot* and *Steiner* Actions Raise the Same Theories as Twenty Related Actions

The *DeGroot* and *Steiner* Plaintiffs similarly argue that their actions, which challenge DraftKings' ability to offer daily fantasy sports contests, are distinct from other legal theories and should be kept apart from all other actions in the MDL. These Plaintiffs ignore the fact that there are at least *twenty* actions pending before the JPML that assert similar theories challenging daily fantasy sports contests under various state laws.[3] While there may be certain nuances and

---

[3] *See Boast v. DraftKings, Inc.*, 1:15-cv-01129 (D.N.M.); *DeGroot v. DraftKings, Inc.*, 2:15-cv-01122 (D.N.M.); *Gomez v. FanDuel, Inc. et al.*, 1:15-cv-23858 (S.D. Fla.); *Guttman v. Visa, Inc. et al*, 1:15-cv-09084 (S.D.N.Y.); *Dickerson v. DraftKings, Inc.*, 4:15-cv-00164 (N.D. Miss.); *Hodge v. DraftKings, Inc.*, 1:15-cv-03951 (N.D. Ga.); *Horan v. DraftKings, Inc.* 4:15-cv-01643 (E.D. Mo.); *Khirani v. DraftKings, Inc.*, 1:15-cv-08193 (S.D.N.Y.);

[Footnote continued on next page]

differences between the laws of the various states, the efficient way to manage any differences is to assign one court to become familiar with the common facts and how they may be applied to the various laws.

Plaintiffs' apparent solution of having nineteen different courts consider the question is backwards and overlooks the fact that the Panel has ordered transfer and consolidation of cases where common theories are asserted under various state laws.  *See In re Aurora Dairy Corp. Organic Milk Mktg. and Sales Practices Litig.*, 536 F. Supp. 2d 1369, 1370 (J.P.M.L. 2008) (transferring actions in which plaintiffs in multiple jurisdictions "bring a variety of state law claims"); *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (transferring actions and noting that "the extent and manner of coordination or consolidation of these [actions] as well as related claims arising under any other federal and/or state laws" are left "to the discretion of the transferee court").  For the reasons set forth in DraftKings' Response, the actions involve numerous common and overlapping factual issues regarding the nature of DraftKings' contests, its promotions, marketing, and advertising, and its internal practices and policies.  The cases also involve overlapping putative nationwide classes of individuals who all are, at minimum, seeking recovery of common funds, namely the amounts that they paid to enter daily fantasy sports contests.  "[T]he presence of different legal theories among the subject actions is not a bar to centralization" where "common factual issues exist." *In re Bank of New*

---

[Footnote continued from previous page]
  *Lozada v. DraftKings, Inc. and FanDuel, Inc.*, 2:15-02083 (N.D. Ala.); *Pope v. DraftKings, Inc.*, 2:16-00019 (M.D. Ala.); *Price v. DraftKings, Inc.*, 4:15-cv-00778 (E.D. Ark.); *Rohrs v. DraftKings, Inc.*, 1:16-10036 (D. Mass.); *Steiner v. DraftKings, Inc. and FanDuel, Inc.*, 8:15-cv-02795 (M.D. Fla.); *Stoddart v. DraftKings, Inc.*, 3:15-cv-01307 (S.D. Ill.); *Turner v. DraftKings, Inc.*, 1:15-00154 (W.D. Ky.); *Tyler v. FanDuel, Inc. and DraftKings, Inc.*, 1:15-cv-02159 (N.D. Ohio); *Tewes v. DraftKings, Inc.*, 4:16-00006 (M.D. Ga.); *Walls v. DraftKings, Inc.*, 2:15-cv-2834 (W.D. Tenn.); *Walls v. DraftKings, Inc.*, 2:15-cv-2835 (W.D. Tenn.); *Wax v. FanDuel, Inc. et al.*, 1:15-24450 (S.D. Fla.).

*York Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372–73 (J.P.M.L. 2012).

Further, as the JPML has repeatedly held, the transferee court will be well-equipped to structure the MDL as it sees fit to address the nuances of the various theories. "Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Smith Patent Litig.*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976), and (2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the judiciary." *In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2007) (rejecting plaintiff's argument that factual differences should prevent an action from being included in consolidated proceedings).

### D. Including All Actions in the MDL Will Promote the Just and Efficient Conduct of the Litigation.

Finally, DraftKings anticipates that it will move to compel arbitration of the claims asserted in all or almost all of the related actions, regardless of the underlying theories asserted. The vast majority of the cases are brought by DraftKings users who agreed to a binding arbitration clause, or by individuals who seek to stand in the shoes of these users. Coordination of all the related actions is thus further warranted because of this overlapping issue, which will result in significant efficiencies and the conservation of judicial resources. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 659 F. Supp. 2d 1363, 1364 (J.P.M.L. 2009) (consolidating actions so the same court could address common threshold question of arbitrability in a "consistent and expeditious" fashion); *see also Genchanok v. FanDuel, Inc. and DraftKings, Inc.*, No. 15-05127 (E.D. La.), Dkt. 23 at 4 ("Determining whether the plaintiffs' claims are

subject to arbitration is a matter that would be more efficiently handled by one court if the JPML determines that consolidation and transfer is warranted."). Moreover, the theoretical possibility of inconsistent rulings absent coordination could unfairly force DraftKings to proceed through arbitration for some cases and continue litigating in others, and could encourage forum shopping. In addition, discovery in each of the dozens of related actions is likely to be a significant undertaking, and the savings in time and expense for both the parties and the judiciary that would result from coordinated pretrial proceeding would be significant.[4]

On the other side of the ledger, there is no potential prejudice to Plaintiffs. Indeed, the court in *Hemrich* specifically found that entering a stay would "ensure there will not be unnecessary duplication of effort, prejudice to the parties, or any inconsistent rulings while the courts and parties await the JPML's decision." *Hemrich*, No. 3:15-cv-00445 (S.D. Ill.), Dkt. 43 at 2.[5] Although the *Hemrich* and *Gardner* Plaintiffs note that a discovery schedule had been entered in *Hemrich*, MDL No. 2679, Dkt. 40 at 11, the parties had advanced no further than exchanging initial disclosures when the court stayed that action. *Gardner* was stayed even before a discovery schedule was set. Thus there is no risk that the *Hemrich* and *Gardner* Plaintiffs would have to "start over" in the transferee court, MDL No. 2679, Dkt. 40 at 11—there is nothing now and will not be in the future anything to "start over" because *Hemrich* and

---

[4] Though the *DeGroot* Plaintiff claims that he needs no discovery to pursue his case (other than publicly available materials that he already can obtain from DraftKings' website), it is still more efficient to ensure that all of the cases proceed in a coordinated fashion before one court, so that any unique discovery needs and requests can be addressed properly.

[5] Similarly, in *DeGroot*, the court has granted motions to extend the responsive pleading deadlines pending the JPML's ruling. *See* 2:15-cv-01122 (D.N.M.), Dkt. 7. And in *Steiner*, the court has denied plaintiff's motion to remand and has postponed all responsive pleading and initial case management deadlines until this Panel has ruled on the pending motions to transfer. *See* 8:15-cv-02795 (M.D. Fla.), Dkt. 29.

*Gardner* are in their infancy and have been stayed.  *See, e.g.*, *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 653 (J.P.M.L. 1981) (transferring where "little or no discovery" had occurred in most of the actions).  None of the other actions have proceeded beyond their infancy, and all of the courts presiding over the four cases at issue here are awaitingthe JPML's decision before proceeding further. *See supra* n. 5.

## CONCLUSION

Consolidation of the dozens of putative class actions against DraftKings would further "the convenience of parties and witnesses and [would] promote the just and efficient conduct of [the] actions."  28 U.S.C. § 1407(a).  Accordingly, DraftKings respectfully requests that this Panel enter an order transferring the cases against DraftKings for MDL consolidation and denying these Plaintiffs' requests to exclude their actions from that MDL.


Dated:  January 22, 2016               Respectfully submitted,

                                       _/s/ *James P. Fogelman*_
                                       James P. Fogelman
                                       GIBSON, DUNN & CRUTCHER, LLP
                                       333 S. Grand Avenue
                                       Los Angeles, CA 90071-3197
                                       Telephone:  213.229.7000
                                       Facsimile:  213.229.7520
                                       jfogelman@gibsondunn.com
                                       *Counsel for Defendant DraftKings, Inc.*